Robertson, J.
The admissibility of the question as to the financial condition of the Company, put to its President, as the facts appeared in evidence at the time it was put, requires to be disposed of, before the objections raised to the final decision. At that time, the only sale of which evidence had been given, was one directly from the Company to the plaintiffs for cash, a promissory note and shares of stock, without knowledge on their part of any embarrassments of the Company, except some with which it seemed able to contend and all of which, they were informed, the money they were to furnish could immediately remove, except the debt to the very person who made the sale to them. Ho evidence had then been given of a transfer to the President, to pay a debt due to him, with a second sale by him to the plaintiffs.
The statutory provision, which renders void transfers by corporations who have refused specie payment or contemplate insolvency, (2 R. S., 5th ed., p. 600, § 4,) has been held to be applicable to manufacturing companies, such as the one in question. (Harris v. Thompson, 15 Barb., 62 ; Bowen v. Lease, 5 Hill, 221.) It has also been held, in reference to actual insolvency, under a similar prohibition, that neither its publicity nor knowledge of it by the transforme, is essential to make the transfer void. (Brouwer v. Harbeck, 5 Seld., 589.) But if the terms of the statute in question, embrace sales in the ordinary and legitimate business of such Company, at times when it might be held afterwards to have been on the verge of insolvency and therefore in contemplation of it; it is plain the whole business of the Company would be impeded, because no one would deal with it at such a hazard, and the purpose of the statute incorporating such institutions would be defeated. Even knowledge of the imminence of such insolvency, ought not to prejudice an honest customer, *200 where the insolvency has not actually occurred, or the affairs of the Company remain in the hands of its officers, in the usual course of business, without the interference of a Court. The statute evidently only intended to prevent injurious preferences, as in a similar provision in reference to banking incorporations. (2 R. S., 5th ed., p. 519, § 9.) The transfers to officers and stockholders, prohibited in a previous part of the same section, (2 R. S., p. 600, § 4,) are specified as being for the payment of debts; and such transfers are included, with those to all other persons, in the one clause, by which the act itself is avoided. “ Contemplation of insolvency,” must also mean something more than mere' expectation of its occurrence; it must include provision against its results, so far as the tranferree is concerned, and that can only be applicable where he is already a creditor and the object is to take his debt out of the equal ratable distribution of the assets of the Company, when insolvent.
In this case, as the evidence stood when the question under consideration was put, the plaintiffs had made a Iona fide purchase of wares, in which the Company usually dealt, without knowledge of any other kind of insolvency than that, if any, which was implied in embarrassments, which I shall presently have occasion to show are not sufficient to create the predicament of contemplated insolvency called for by the statute; there was, therefore, no foundation laid for inquiring into the condition of the Company, when the question under consideration was put.
The defendants claimed, in a subsequent part of the trial, the benefit of such statutory prohibition, by calling upon the Court to find that such sale was void for a violation of it, and excepting to its refusal to obey such call. Even then, however, the case had only been varied by testimony tending to show a transfer to Dr. Sayre, and a sale by him to a Zmia fide purchaser without notice; this variation of the aspect of the case would only strengthen it for the plaintiffs, as such sale to a Ixona fide purchaser would, when unassailed, preclude the objection being taken of illegality in the first sale to Dr. Sayre. But behind all *201 these, lies the fact that there was no proof of the insolvency of the Company at the time of the purchase; notes of theirs which had lain over had been taken up. The complaints in the actions in which the judgments were recovered, it is true, state non-payment of debts and evidences of debt, but they were no evidence ag’ainst the plaintiffs, who were no parties to such suits, and who bought the goods in question before the judgments in such actions were recovered; besides which, much the larger claim of the two was that of Dr. Sayre, which had been assigned to the defendant, and which the plaintiffs had good reason to believe would not be used to cripple the Company. Both judgments were entered upon a service of the summons upon Dr. Sayre, who might have had an interest in allowing judgment by default if it would aid to defeat a sale made by him. But, at all events, even if such judgments were admitted in evidence, the mere nonpayment of the debts mentioned in such complaints did not constitute insolvency, within the meaning of the statute in question; the prohibition in the 4th section distinguishes between refusal to pay evidences of debt, and insolvency; (2 R. S., 5th ed., p. 600 ;) so, too, in the statute respecting proceeding in equity to dissolve corporations, to which this may be supposed to refer, the same distinction is preserved. (3 R. S., 5th ed., p. 763, §§ 46, 47.) Insolvency is not a convertible term for a mere refusal to pay, (Cutler v. Sanger, 2 Younge & Jervis, 459 ; 2 Bouv. Inst., 157,) although the latter may be evidence of it. This Company, although embarrassed, had conducted business for eighteen months before the transaction now before us. We have no means of knowing the means, credit or assets of the Company or what they were worth; the value of their property may have far exceeded their indebtedness; it is not until all means and reasonable hopes of raising money to meet it are gone, that statutory insolvency begins; the refusal, therefore, to find that the sale to the plaintiff was void by the statute was fully warranted as matter of law.
*202 But the insolvency of the Company was not one of the issues made by the pleadings, and, therefore, the Judge, before whom the cause was tried, was not bound to pass primarily upon it. After the cause had been tried and the decision was given, the case states a request was made to the Judge to find such insolvency; how, when or where does not appear, whether by private solicitation, or a notice in Court, or on the settlement of the case. It also appears that the Judge refused to pass upon it because it was not in issue: whether this is a good reason or not for the refusal is immaterial, perhaps; it-was in issue, although not-one of the issues made by the pleadings. If it was impor- , taut for the defendant to have such fact, although not in issue by the pleadings, passed upon by the Court, the request should have been made on the trial before the decision, or upon a motion, afterwards, to have the same inserted, or upon the settlement of the case, when the opposite party could be present. There is no reason why such should not be the practice in regard to a trial by a Court without a jury, as well as in regard to one before a referee, as to which it is the established practice. (Van Steenburgh v. Hoffman, 6 How., 492 ; Hulce v. Sherman, 13 Id., 411 ; Renouil v. Harris, 2 Sand. S. C., 641 ; Church v. Erben, 4 Id., 691.) The Code makes no mention of exceptions except on the trial and to decisions on matters of law arising on such trial, and a review of questions of fact is only to be had on a case or exceptions as on a trial by jury. (§ 268.) Great injustice would ensue if a new trial could be had for a refusal to insert in a decision already written and filed, adjudications upon facts not mentioned in the pleadings, without a request before such decision to pass upon such facts. If the refusal to accede to such request was made in court, either upon a motion to insert the determination of the particular fact in the case, or on the settlement of such case, and it was improperly refused, the remedy would be by a motion for a resettlement, or appeal from such a denial as an order on a motion, not by *203 excel)tions it as to a decision on a trial, so as to send the whole case back for a new trial.
But in addition to the supposed error of a refusal to pass upon a particular fact, it has been suggested that the decision of the Judge at Special Term was radically defective for omitting to pass specifically upon some of the issues made by the pleadings: such as, 1st. The direction of the defendant to levy upon and sell the property in question; 2d. The previous ownership of the plaintiffs, or, what is equivalent, the previous sale of it by the Company to them, and the execution and delivery of the orders to them for goods by authority of such Company, with the actual delivery of such goods to, and possession thereof by them ; and, finally, a demand upon the defendants for the goods, and refusal or some other act of conversion. As the decision does not contain any special adjudication of such facts, the question, of course, arises, whether the defendant can take advantage of such omission, either with or without an exception.
The provisions of the Code respecting reports of referees are very nearly identical with those respecting’ decisions by a Court upon a trial by it without a jury. (§ 268-272.) Referees are required to “state the facts found and the conclusions of law separately;” then report on the whole issues becomes the judgment of the Court, and judgment may be entered thereon as on a decision by a Court. In settling a case or exceptions for a review of his decision, he is required briefly to specify therein “the facts found by him and his conclusions of law.” The question then arises, what effect is produced on the judgment by an omission to state material facts, either in the first decision or such subsequent findings.
It has always been held, both before, (Curtis v. Staring, 4 Wend., 199 ; Cafferty v. Keeler, 12 Id., 291 ; Stafford v. Bacon, 6 Hill, 264,) and since the adoption of the Code, (Church v. Erben, 4 Sandf. S. C., 691 ; Renouil v. Harris, 2 Id., 641 ; Van Steenburgh v. Hoffman, 6 How., 492 ; and Hulce v. Sherman, 13 Id., 411, overruling Lakin v. Erie *204 R. R. Co., 11 How., 412,) that omissions in the report of a referee, or in findings of fact by one, could be supplied by motion. In Hulce v. Sherman, (ubi sup.,) it was held that an appeal to the General Term as an appellate court was “not the proper remedy for an omission : the referee had not erred in passing upon the defence, but had omitted to do so.” In Johnson v. Whitlock, (3 Kern., 348,) the Oourt say that if the statement of facts and conclusions of law were imperfectly made, “there was no doubt of the power of the Supreme Court to order a resettlement.” There seems to be no good reason why the decision of a Court without a jury should not be subjected to the same process.
The question whether an appellant is entitled to claim as error, an omission of a Beferee or Judge without a jury, to show that he has passed upon a material fact, or whether he is bound to procure a record, on appeal, which shall show affirmatively that such Beferee or Judge decided erroneously on such fact, has been several times before the Court of Appeals. In Otis v. Spencer, (16 N. Y. R., 611,) the judgment was affirmed because the record did not establish an error, although there was an omission. In Carman v. Pultz, (21 N. Y. R., 547,) there was, as stated by the Court, “an evident omission of important facts in the statement or reportand it was held that those facts must be presumed to have been such as warranted the judgment appealed from; that such reports and statements are not construed with the strictness applied at common law to special verdicts; and that it was incumbent on the appellant so to present the facts upon which the case depends as to show affirmatively that an error had been committed; that, if any recourse was to be had to any presumption, it was only to such as would sustain the judgment. A still more direct and explicit adjudication is to be found in favor of the respondents in the case of Grant v. Morse, decided in the Court of Appeals at their last term, to the effect, “ that a general conclusion of a referee is to be construed as a finding upon all the *205 material questions, though such a finding be not expressed in terms,” and that to found an objection to the omission of the referee to find one way or the other upon a particular question of fact, he should be specifically requested to do so, and an exception taken to his refusal. (22 N. Y. R., 323.) The same principles were applied to the case of a decision by a Judge without a jury, in Viele v. The Troy and Boston R. R. Co., (20 N. Y. R., 186,) where no facts were found by the Judge.
The restoration of section 267 of the Gode to its original condition as regarded decisions by Judges without a jury, by the amendment of 1860, does not affect the question. It is merely directory, as is the requisition that a decision should be filed in twenty days. (Burger v. Baker, 4 Abb., 11 ; The People v. Dodge, 5 How., 47 ; Stewart v. Slater, 6 Duer, 84,) or at the most gives an appellant a right to have such statement inserted, and does not make it error to omit it.
The cases of Astor v. L’Amoreux, (4 Seld., 107,) or Griffin v. Cranston, (1 Bosw., 281,) do not militate against these views. In the first the Oourt of Appeals merely held that this Oourt at General Term had no right to give judgment absolutely for the appellant on a reversal of a judgment at Special Term, unless the respondent could not alter his case on a new trial; and so that case was interpreted in Edmonston v. McLoud, (16 N. Y. R., 545,) subsequently. In the other case, (Griffin v. Cranston,) the Court at Special Term found certain facts, justified by the evidence, and thereupon decided as a conclusion of law, that a transfer of property assailed in such case, was made with intent to defraud creditors This Court held at General Term that such intent had been inferred from such facts as matter of law, particularly as the Court had not stated its inference as a matter of fact, thus bringing it within the principle of Titus v. Orvis, (16 N. Y. R., 617.) It does not appear whether the Court at General Term would itself have inferred such intent from such facts, as matter of fact, but they reversed the judgment at Special *206 Term, because such facts did not sustain such intent as matter of law. This clearly did not involve the question of an omission to pass upon material facts or error; in passing upon them, the decision turned entirely upon a question of law, as applicable to the facts found.
Any evidence of fraud in this case, committed upon the defendant as a creditor of the Company by the plaintiffs and Sayre acting in concert, must be considered apart from the statute prohibiting transfers by insolvent companies, and there is certainly none sufficient to warrant this Court in holding differently in reference to such fraud from what was held at Special Term. If the President misappropriated the property of the Company to discharge his own obligation, it is a matter for which he may be liable to the Company, but it does not invalidate the sale. The worthlessness of the stock delivered, was not proved to have been known, and the President induced the plaintiffs to advance an additional sum. The plaintiffs, without any hurry, removed the goods gradually and openly. There is even evidence that the defendant knew of such removal and stated his only objection to be that it took all the glass. Up to the very time of the levy, the removal continued. I am unable to see in any of these acts, a fraudulent combination between Sayre and the plaintiffs, and they furnish no reason for reversing’ the judgment.
The last objection is that the evidence in the case did not make out a delivery of the goods to the plaintiffs by the Company; it is claimed that until selection, the title by delivery was not complete; that by taking possession at first, of more than was necessary, by marking, the plaintiff did not come into possession under the sale of the quantify sold, until they rejected what they did not wish to retain, which they did not do until after the levy. The case of Crofoot v. Bennett, (2 Comst., 258,) disposes of this objection ; it was there held that the possession of a whole brick kiln by a vendee, out of which he had bought a certain quantity to be selected by him, was a sufficient delivery of the bricks purchased, and enabled the vendee to select *207 them at any time. In this case the plaintiffs took the only possession they could, by exercising acts of control, and putting ón labels to indicate their ownership. There was some little conflict in the evidence as to putting on the labels, but the testimony preponderates in favor of its having been done.
Upon the whole, therefore, there being no error of law or fact committed on the trial or in the decision, the judgment must be affirmed, with costs.
Bosworth, Ch. J., and Hoffmah, J., concurred in affirming the judgment.
Ordered accordingly.