Monell, J.
The evidence taken on the trial, of the action not having been incorporated in the case upon which this appeal was heard, we are not called upon to review any of the findings of fact, except the finding that there was no fraud in the transaction between Judson and Cranston, nor any intent to hinder, delay or defraud the individual creditors of Judson. We are to assume that all the other facts found by the Court are sustained by the evidence. The sole question therefore is, is there, upon the face of the several instruments, executed between Judson and Cranston, on the 5th of December, 1854, in connection with the facts found by the Court, intrinsic and inherent evidence of an intent, by Judson, to hinder, delay or defraud his individual creditors ? These several papers are parts of one entire transaction, and are to be read and construed as if incorporated into one instrument ; and we are to determine from them, collectively, whether they contain proofs of a fraudulent design, on the part of Judson. The finding of the Justice, of the consideration of the $25,000 mortgage, might be open to question, had we the evidence before us. From the instrument itself, it does not seem to have been executed for any other purpose than is therein declared, namely, as a security for the sum of $25,000. But we cannot say what evidence there may have been admitted, without objection, which justified the finding that it was given to secure Cranston for any indebtedness of any kind, and to indemnify him against any liabilities of the firm then undiscovered.
*8 The grounds upon which the plaintiff claims the transaction to be fraudulent and void, as to the individual creditors of Judson, are first, that the effect was to remove from the reach of his creditors, not only all his present property, but also all future benefits which might accrue to him in respect to it; and second, that it secured to Judson and his family a beneficial use of the property, or of some part of it, notwithstanding the assignment.
The only evidence of any intent, on the part of Judson, to remove from the reach of his creditors, the future benefits which it is alleged he hoped might accrue to himself, in respect to the property assigned, is found in the service contract, where it is agreed that, in consideration of the services of Judson and his wife, he was to be allowed to occupy the rooms in the hotel then occupied by them, to have their board, and she, Mrs. Judson, to have a share of the profits of the business equal to, and not exceeding the sum of $5,000 per annum. By the terms of this agreement the only compensation which Judson was to receive for his services was, the use of the rooms then occupied by him and his wife, and their board in the hotel. So far, only, is he a party to the contract. All the other stipulations concern Ms wife, and not himself. It is agreed that she shall receive, as a compensation for her services, a share of the profits, equal to, but exceeding $5,000 per annum. There is no guarantee of profits, nor has she or her husband any right to an account of the profits or of the business, until the expiration of the term, which was to continue during the term of the lease, and of any renewal thereof. Mrs. Judson was a party to the contract, and as far as she could be, was bound by its provisions. It is not necessary here, to inquire whether such an agreement could be enforced against Mrs. Judson, nor whether the $5,000 compensation for her services did not belong to her husband, and might not be seized by his creditors. It has been assigned by Judson and his wife to one of his creditors, and is not sought to be reached by this action.
Judson was insolvent and embarrassed, a debtor to the firm *9 in upwards of $13,000, the firm’s assets less than its liabilities, and itself on the verge of bankruptcy. In this state of affairs Judson transferred to Cranston all his interest in the partnership property and effects, gave a mortgage to secure Cranston for any indebtedness of any kind, which, upon a final accounting, might appear that Judson owed him, and to indemnify him against any liabilities of the firm then undiscovered. As a consideration moving to Judson, Cranston assumed all the debts, and agreed to give employment to Judson and his wife in the hotel, and to allow them to occupy rooms therein.
Although the effect of this employment was to secure a benefit to Judson, I cannot see in it any evidence of an intent to defraud his individual creditors. The interest of Judson, at the time of the transfer, in the hotel property and partnership effects, was of no value whatever. The partnership debts were first to be paid, and the firm, if compelled to go into liquidation, was insolvent. The partnership creditors would have exhausted all the partnership property, leaving nothing for individual creditors. There was no trust, express or implied, created for Judson’s use. .His entire interest in the property was conveyed to Cranston, without reservation or restriction. He parted with all control over and right to it, and the Justice has expressly found as a fact, that there was no agreement that he should be reinstated in the relation he had before the dissolution, when he should have settled with his creditors, or that he should share the benefit of the renewed lease. In short, I cannot discern, that after this transfer to Cranston, Judson had any more right to or interest in the assigned property than any servant who might on that day have entered into the employment of Cranston, in the hotel.
There is no extrinsic evidence of fraud in this case. Ho facts or circumstances are shown which would produce conviction on the mind, that Judson designed to hinder, delay and defraud his creditors. From the service contract alone we are called upon to spell out such a fraudu *10 lent intent. To vitiate this sale, there must have been fraud in fact; (what was formerly denominated fraud in law, no longer exists;) (Cunningham v. Freeborn, 11 Wend., 240; Wilson v. Robertson, 21 N. Y. R., 587, 592;) and we must be able to say that the provisions of the instrument are such, that when carried out to their apparent and reasonable intent, it will be fraudulent in its operation. We cannot presume fraud when the instrument admits of a contrary construction. (Kellogg v. Slauson, 15 Barb., 56; 11 N. Y. R., 302.)
The only future benefit which was likely to accrue to Judson, by the transfer, was exemption from liability for the debts of the firm. This was a sufficient consideration for the sale. The debts assumed by Cranston were equal to the assets, if not in excess of them, and were entitled to preference in payment, to the individual creditors of Judson.
Although it was a part of the arrangement that Judson and wife were to be allowed the use of the rooms in the hotel then occupied by them, yet this was not a benefit derived from the transfer, but from an independent agreement, to be compensated for to Cranston, by the future services to be rendered by Judson and wife. Part of the inducement for the sale doubtless was, that Judson should be taken into the employment of Cranston; but the transfer was absolute, and complete, without reservation, and did not secure such a future benefit from the assigned property as would render the assignment void. Board and lodging were all Judson and wife were to receive for their services unless there were profits, and the contingency of profits was to depend, in some degree, upon their own exertions.
But it is also claimed by the plaintiff that the transfer secured to Judson and his family the beneficial use of a part of the assigned property; that it, in effect, created a trust in favor of Judson; and for these reasons was void. There was no reservation by Judson of the rooms in the hotel, which would give him the right of entry, or to avoid *11 the sale, if entry was denied. His conveyance was absolute, and under his contract he would have no more than a simple right of action for damages.
The cases to which we were referred by the plaintiff’s counsel were reservations of parts of the assigned property for the benefit of the assignor; thus in Goodrich v. Downs, (6 Hill, 438,) the assignment was to pay a part of the creditors, and if any surplus remained, to pay it to the assignor. The assignment did not provide for the payment of all the debts. It was held void as creating a trust for the benefit of the assignor. In Carpenter v. Underwood, (19 N. Y. R., 520,) the assignment was of all the assignor’s property “except a claim he held against S. H. & P. C., then in suit in the Supreme Court.” The Court say here is no reservation for the advantage or benefit of the assignor, and held the assignment valid.
All these questions, as far as my investigations have gone, have arisen in cases of assignments in trust to pay creditors, and none of them in cases where there has been a sale of all the interest of the assignor, for a sufficient consideration ; and although the language of the statute comprehends a transfer absolute on' its face, but intended to create a trust in favor of the transferrer, and although every transfer of property necessarily removes it from the reach of creditors and tends to hinder and delay them, still, if the transfer is made for a proper object, and with an honest purpose, it is not void.
Again, if the transaction between these parties can be regarded as providing for the future employment of Judson and wife, in the same business theretofore carried on by Judson and Cranston, it does not follow that the assignment and transfer were void. Provisions in assignments authorizing the assignee" to employ agents for the purpose of executing the trust, have always been upheld, (Burrill on Assignments, 1st ed.,‘ 205, 442,) and do not furnish any evidence of a fraudulent design.
As a consideration in part, for an absolute and unconditional transfer of all the interest of Judson in the *12 partnership property and effects, it was lawful and consistent with an honest purpose for Cranston to take Judson into his service, and to agree to give to him and his wife board and .lodging, and a further compensation if the business earned it. That no trust was created thereby in favor of Judson, nor was there any benefit secured to him which would evince an intent to hinder and delay his creditors, is, to my mind, most manifest.
The rights of the individual creditors of Judson were subordinate to those of the creditors of the firm ; and the only interest the former could reach, was that remaining to Judson, after the payment of the firm debts. It seems to me, therefore, that the only ground upon which the individual creditors of Judson could successfully attack this transfer, is, that the consideration was inadequate, which, in conjunction with other facts, might render the sale void.
Not being called upon, as already stated, to review the findings of fact in this case, further than the alleged fraud appears upon the face of the papers, we are relieved from all difficulty, if any existed, by the previous decision of the Court in this case. (1 Bosw., 281.)
When the case was up before, it was upon an appeal from a judgment in favor of the plaintiff, declaring the transfer and assignment void. The same facts found on the second trial were found, substantially, on the first, but with a different result. The Court, on appeal, reversed the judgment, holding (p. 310) that “the fact of making this agreement with Judson, for the services of himself and wife, considering the peculiar circumstances under which it was made, furnishes no satisfactory evidence that Judson transferred his interest in the hotel, with intent to defraud his creditors.”
I see no reason why the findings and conclusions of the Justice upon this trial should be disturbed.
The judgment should be affirmed.
*13 Robertson, J.
This is an action brought by a judgment creditor of the defendant, Judson, to set aside two instruments executed by him to the defendant, Cranston, on the 5th of December, 1854. The first of those instruments is a release by Judson to Cranston of all his interest in a partnership previously existing between them. The second is a mortgage executed by Judson to Cranston for $25,000, on certain chattels then in a building known as the Brevoort House. The case contains none of the evidence, and only the findings of the Court. Among those findings is one, that there was no fraud or fraudulent intent in fact, in the execution of such instruments, and another, that such two instruments were executed on the day of their date, as part of one transaction, with two other instruments which were executed on the same occasion ; one being a dissolution of the partnership contract theretofore existing between Judson and Cranston, and the other, what is termed a service contract, signed only by the latter, for the employment by him of Mr. and Mrs. Judson, for certain compensation. It was also found that such four instruments formed the consideration for each other; that Cranston agreed verbally to assume the debts of the concern then known, and the mortgage of $25,000 was executed to secure him for any indebtedness of Judson to him, and for any undiscovered liabilities of the concern.
Nothing on the face of either of the instruments assailed shows any fraud, but it is claimed that the service contract, being part of the consideration for them, shows that they were for a fraudulent purpose. The statute against fraudulent conveyances makes every instrument void, which is made with an intent to hinder, delay and defraud creditors, (2 R. S., 137, § 1;) but it also makes such a fraudulent intent a question of fact and not of law. (2 R. S., 137, § 4.) Courts have, however, assuméd, that the intent of an instrument may be gathered from its face, and, no evidence being admissible to contradict it, that where a fraudulent, intent is apparent intrinsically, it must *14 be taken as conclusive, evidence of the intent to defraud which makes, the instrument void. The moment, however, extrinsic evidence becomes necessary to show the fraud, the intent becomes a question of fact, and must be decided as such. The learned Judge has found, in this case, against such an intent, as a fact; and there is certainly nothing in his. other findings to entitle this Court to overthrow his judgment upon that point.
I have not been able to find any case, nor has any been pointed out. to us, in which it is held, that where cotemporaneous instruments are to be had recourse to, to establish a fraudulent intent in an instrument, it becomes the less a question of fact, since they are introduced as mere evidence at large, are not conclusive, and other evidence may be equally well introduced to rebut the inference. It is possible that when they are mutual considerations-for each other, and no other circumstances are added, it may become a question of law notwithstanding the rigorous wording of the statute. But then the fraudulent character of either must depend exclusively upon the intended fraud manifested upon the face of both, without regard to any extrinsic facts not necessary to give a legal interpretation to their terms. _
The service contract, the terms of which are said to render the mortgage and assignment void, provides for the employment of Mr. and Mrs. Judson during the continuance of an existing lease and any new term, by Mr. Cranston, in such manner as he should direct, in the Hew York Hotel, for conducting which the partnership had been created, as a compensation for which they were to be allowed their board, and to occupy certain rooms then occupied by them in such hotel, as long as Cranston was proprietor, and Mrs. Judson was to receive, as a compensation for her services, a share of the profits of the business not exceeding $5,000 a year, to be ascertained at the end of the term. Cranston agreed, in case of a sale, to secure a similar agreement from the purchaser. It contained no guaranty of profits..
*15 Of course in determining on the fraudulent intent manifested by such agreement, all accompanying occurrences, such as the conduct of the retiring partner, his debts and liabilities, the relative value of the partnership property and debts, and all others must be discarded. The whole controversy is narrowed to a single question, whether an agreement to dissolve a partnership, transfer the interest of a retiring partner to a continuing one, and secure the latter against anymore than certain liabilities of the partnership, and also for any indebtedness of the retiring partner, is made fraudulent and void, by taking therefor an agreement to be allowed rooms and board for the retiring partner and his wife, in the hotel which the partnership previously held jointly, and an interest in the profits to be paid to the wife, in consideration of such retiring partner and his wife remaining in the employment of the continuing partner.
After the lease was transferred, the continuing partner had exclusive dominion over all parts of the building; an agreement to allow any one to occupy a room in it, was not a lease of it; if it were, there is.no legal objection to a person’s leasing all but certain parts of a building; those parts may be subject to his creditors’ claims, but their reservation will not make the lease void. If there is any disproportion between the services and compensation, it is not apparent judicially. Nor do I know any rule of law to prevent a contract for services with a husband and wife, for money to be paid to the wife, or even allowing her to have a share of profits; if there is, his creditors can still reach such amounts as may become due.
This Court cannot judicially determine, that the interest sold by the defendant, Judson, was worth more than his, contract with the defendant, Cranston; and, as I have already stated, all other considerations are excluded. The assignment and mortgage were, therefore, valid.
This conclusion is the same as that arrived at by this Court previously, when the case was before it, (1 Bosw., *16 310,) and the circumstances are not in any degree altered.
I concur in affirming the judgment with costs.
Moncrief, J., also concurred in affirming the judgment.
Judgment accordingly.