### HAVENS *v.* EXTEIN *et al.*

*(Supreme Court, Special·Term, Monroe County.* September 20, 1888.)

·FRAUDULENT CONVEYANCE—RESERVATIONS—EVIDENCE.

A debtor conveyed his stock of goods to defendants, his creditors, by an instrument which recited the indebtedness and provided that the debtor was to act as defendants' agent in selling the goods, and such additions thereto as defendants might make; that the debtor, during such agency, was to render weekly statements, remitting at the same time the proceeds of the sales, less expenses; and that the agency was to be revocable at the pleasure of the principals. The *bona fides* of defendants' debt was not disputed. *Held,* in the absence of an agreement that the debtor should reserve to himself from the sales more than a reasonable compensation for his services, or that defendants knew that he was appropriating more than this, there was nothing to raise a presumption of fraud in the conveyance.

· Action by James S. Havens, receiver of David Selling, against Julia A. Extein and others, to set aside as fraudulent an assignment of certain goods.

*Waldo G. Morse,* for plaintiff. *Baker & Schwartz* and *Mr. Oake,* for defendants Extein, Sulbach, and Lempert. *Spahn & Ludekins,* for defendant Selling.

ADAMS, J. This action is brought by the plaintiff, as a receiver appointed in proceedings supplementary to execution in an action against the defendant Selling, to set aside as fraudulent a transfer or assignment of a stock of goods ·executed by the defendant Selling to the defendants Extein, Sulbach, and Lempert on the 15th day of June, 1885. The plaintiff, in the second count ·of his complaint, treats the instrument by means of which the transfer in question was made as a chattel mortgage, and insists that it had become in-·operative as against the claim or lien represented by him, by reason of a failure to file a copy of the same within the time prescribed by statute. The ·complaint was dismissed as to this cause of action at the trial upon the au-.thority of *Steward* v. *Cole,* 43 Hun, 164, and the cases there referred to, so

that the only question left for the consideration of the court is as to whether the transfer in question was made in fraud of the creditors of the defendant Selling, and especially of the plaintiff in this action. It appears that upon the 15th June, 1885, the defendant Selling was engaged in business at the city of Rochester as a dealer in hats, caps, and gentlemen's furnishing goods; that he was indebted to the other defendants, composing the firm of Extein & Co., and doing business in the city of Buffalo, in the sum of about $1,500; that, being unable to meet this obligation, he executed to such firm a memorandum or agreement, by the terms of which he sold them the stock of goods in question upon the condition that after the payment by them in full of all the present and future liabilities of the vendor, Selling, "from and out of the net profits of said business, all profits to be divided after such payment of said liabilities in full shall be and belong to the party of the second part, (Selling,) for his sole and separate use and benefit." This agreement, it seems, was supplemental to another and principal one entered into by the parties upon the same day, by the terms of which, after reciting the fact that Selling was indebted to Extein & Co. in the sum of $1,579.96, it was agreed that, in consideration thereof, and of the payment of the sum of one dollar, he would sell them his stock of goods; that he would act as their agent in disposing of the same, and of such additions thereto as might be made by him in the name or upon account of Extein & Co.; that during the continuance of such agency he would render his principals a weekly statement of all sales, purchases, and expenses made or incurred in the business, at the same time remitting to them the proceeds of all such sales, less moneys paid out on account of the business; and that the agency thus created should be revocable at the pleasure of the principals. This latter instrument was duly filed in the clerk's office of Monroe county, and, in pursuance of its terms, the defendant Selling, as agent of Extein & Co., continued the business at the same place in the city of Rochester, and without any apparent change in its ownership or the manner of conducting the same. It further appears that additions were made to the stock from time to time; that Selling rendered to his principals a weekly statement of the business as provided in the agreement; and that this condition of things continued until September 27, 1886, when Extein & Co. sold an equal one-half interest in said stock and business to one Julius W. Georger, for the sum of $750. A new agreement was thereupon executed, and the business was thereafter conducted in the joint interest of Extein & Co. and Georger, by Selling, as their agent, upon substantially the same basis as before, until February, 1888, when the stock remaining unsold, including the additions made to the same, was transferred to Mrs. Selling, the wife of defendant, and one Ottenberg, for the sum of $3,605.29, and the business was subsequently conducted by such last-named purchasers. The sum thus realized, together with the amount remitted by selling from time to time, extinguished his original indebtedness, as well as all claims on account of additions to the stock. The evidence also discloses that on the 15th June, 1885, the firm of Extein & Co. was composed of the defendants Extein, Sulbach, and Lempert, and one Max Wile, who was a special or limited partner, but that thereafter, and on the 23d November, 1886, the defendants Sulbach and Lempert retired from the firm, their places therein being taken by Herman Waterman and Isaac Hyman, the business being conducted as before under the name and style of Extein & Co. While it can be fairly assumed, I think, that at the time of executing the transfers or assignments of June 15th the defendant Selling was insolvent, yet there is no evidence that any other creditors were pressing him, and, so far as the claim represented by plaintiff is concerned, it had not even been established as a legal demand against him. It would seem, therefore, that the reasonable inference to be drawn from the facts of the case is that Selling, either voluntarily or at the solicitation of Extein & Co., executed these instruments with the design of furnish-

ing them security for their debt in the nature of a mortgage, and this, it is quite clear, he had a right to do, whether solvent or insolvent, provided he acted in good faith, even though he reserved to himself the surplus after the debt intended to be secured had been satisfied.   *Leitch* v. *Hollister*, 4 N. Y. 211; *Dunham* v. *Whitehead*, 21 N. Y. 131; *Knapp* v. *McGowan*, 96 N. Y. 75.   We are brought, therefore, to the consideration of the real question in the case, viz., the intent of the parties in entering into this arrangement.

It is insisted by plaintiff's counsel that the fact that Selling was permitted to remain in charge of the store; that the business continued to be carried on in substantially the same manner as before the transfer; and that Selling appropriated to his own use a portion of the avails of the mortgaged property,—are circumstances from which a fraudulent intent may be inferred, and it is very proper that due consideration should be given to this proposition, especially to that portion which charges Selling with using the avails of the property, for if this was done by any express or tacit understanding with the mortgagees, or with their knowledge or assent, it doubtless renders the mortgages fraudulent and void.   *Potts* v. *Hart*, 99 N. Y. 168, 1 N. E. Rep. 605.   The essential element of knowledge or assent on the part of Extein & Co. appears, however, to be lacking.   There is certainly no evidence of any agreement on their part that Selling should reserve to himself from the avails of the goods anything further than a reasonable compensation for his services as their agent, and if he did appropriate more than this the evidence does not disclose that the fact came to the knowledge of his principals.   On the contrary, it does appear that from week to week he rendered them a statement of sales and expenses, and accompanied the same with a draft or check for the balance then due.   There is apparently no contention as to the *bona fides* of Extein & Co.'s claim against Selling, and I think it quite satisfactorily appears that on the 15th June, 1885, the stock of goods assigned or mortgaged to them was not actually worth more than their debt.   However, they took it to secure their debt, and the instrument by which it was transferred to them, and which expressed the terms and conditions upon which it was to be managed in the future, was made public by placing it upon file in the county clerk's office.   So far as the testimony affords us any information, it would seem that those terms and conditions were observed, and that the mortgagees or transferees realized no more from the transaction than was sufficient to pay their debt and make them good for the additions to the stock which had been made by them or on their account.   If this be so, the transaction appears to be nothing more than a legitimate effort to secure a just debt, and as such must be upheld.   *Brackett* v. *Harvey*, 91 N. Y. 214.   The conclusion reached upon this question, which is decisive of the case, renders any consideration of the contention of defendants' counsel respecting a defect of parties unnecessary.   Judgment is ordered dismissing plaintiff's complaint, with costs to the defendants Extein, Sulbach, and Lempert.