CRIBB & COMPANY *v.* BAGLEY & RIVERS.

83  105<br/>118  736

1. The mere fact that in a sale of all its assets made by an insolvent partnership, there is an agreement by the purchasers to employ one of the partners at a stipulated compensation per month to manage the business, will not *per se* render the sale void as against creditors. If there was no intention to defraud, delay or hinder the creditors, and if the sale was for full value above and beyond the agreement for employment, the transaction was valid.
2. Though the transaction be one of sale to persons not creditors, and falls under the second paragraph of section 1952 of the code, yet for illustration, the court may give in charge to the jury the first paragraph of this section, as well as the second, since they serve to illustrate each other with regard to benefits reserved by the debtor.
   July 8, 1889.

Fraud. Partnership. Insolvency. Sales. Debtor and creditor. Charge of court. Before Judge ATKINSON. Ware superior court. November term, 1888.

An execution based on a judgment of the fourth day of February, 1888, for $67 principal (no interest), in favor of Bagley & Rivers against S. E. Cribb and G. W. Phillips, was, on the 22d day of March, 1888, levied on one black mule, one iron-gray mare-mule and one gray horse named "Joe Brown," as the property of said de-

fendants. A claim to the property levied on was interposed by D. T. Cribb & Co.

Upon the trial, plaintiffs in execution put in evidence their *fi. fa.* with the entry of levy thereon. Also the following returns from the tax digest of Ware county for the year 1887: Cribb & Phillips, total number of acres of land 15, number 329, 8th district, value $400; merchandise of every kind $1,500; horse, mules, hogs and all other stock $1,250; plantation and mechanical tools, etc. $100; value of all other property $1,300; aggregate value of whole property $4,550. Cribb, Stephen E., value of household and kitchen furniture $245; horses, mules, etc. $26; aggregate value of whole property $271. It was admitted that no returns appeared on said digest for D. T. Cribb or Mary J. Cribb, who composed the firm of D. T. Cribb & Co.

Plaintiffs also introduced the officer who made the levy, who testified that the property was pointed out by the attorney for plaintiffs; that when he went to levy on it, he called on S. E. Cribb, told him his business and asked where the horse and mules were; S. E. Cribb told him, and went with him to the lot of D. T. Cribb & Co. where they were, loaned him bridle and saddle, and he took charge of them. S. E. Cribb appeared to be in control, and witness saw no one else in charge.

Claimants introduced a conveyance dated November 1, 1887, between S. E. Cribb and G. W. Phillips, composing the firm of Cribb & Phillips, and D. T. and M. J. Cribb, composing the firm of D. T. Cribb & Co. Consideration recited was $2,000 in hand paid. By this instrument, the parties first mentioned conveyed to the parties last mentioned 15 acres of lot 325 in the eighth district of said county (describing it), with still, fixtures, etc. thereon, and wind-mill and dip-barrels and turpentine and timber privileges on a number of lots of land mentioned; also eight head of mules described as fol-

lows: "Three iron-gray mare-mules, two black horse-mules, one sorrel-mule, one bay mare-mule, one black mare-mule and one roan horse named Joe Brown; all of the aforesaid property sold under and subject to a mortgage given by the said Cribb & Phillips to Baldwin & Co., dated December 31st, 1886," etc.

Also bill of sale by Cribb & Phillips to Baldwin & Co., in consideration of $1,200 in hand paid, to "three iron-gray horse-mules and four black mare-mules and one sorrel-mule." This instrument was dated February 21, 1887, and upon it was the entry, "Paid and satisfied by D. T. Cribb & Co. February 5, 1888. Baldwin & Co." Also two promissory notes by Cribb & Phillips to Baldwin & Co. or order, each dated December 31, 1886, each for $1,776.22, one due November 1, 1887, and the other December 15, 1887, and each indorsed, "without recourse on us, Baldwin & Co." Also a conveyance dated December 31, 1886, by Cribb & Phillips to Baldwin & Co. in consideration of an advance of $5,328.66 for the purpose of enabling them, Cribb & Phillips, to maintain and carry on a turpentine farm and distillery, the advance being evidenced by three promissory notes of the same date, each for $1,776.22, due July 1st, November 1st, and December 15th, 1887, respectively, with interest, etc., and containing various stipulations and agreements as to the shipment of naval stores by Cribb & Phillips to Baldwin & Co., etc.; and conveying, by way of mortgage, the 15 acres of land already mentioned, with still, fixtures, etc., turpentine and timber privileges on the lands mentioned in the conveyance by Cribb & Phillips to D. T. Cribb & Co.; also the stock of goods situated in the storehouse in the town of Glenmore, belonging to Cribb & Phillips; also the stock of goods "belonging to D. T. Cribb & Co." in the same town, etc.; all the described property being declared by Cribb & Phillips to be theirs and in their own name, right and

possession, etc. This instrument bears the entry, "Georgia, Chatham county; paid, satisfied, cancelled, attest this December 23, 1887." Also a transfer of the above mortgage by Baldwin & Co. to Peacock, Hunt & Co., in consideration of $1,776.22 paid by the latter. This transfer is dated December 23, 1887. All the above mentioned instruments were recorded in the office of the clerk of the superior court of Ware county before the date of plaintiffs' judgment, except the promissory notes mentioned.

Claimants also introduced an indenture dated December 23, 1887, between D. T. Cribb & Co. and Peacock, Hunt & Co. by which, for the securing of three promissory notes of the same date, each for $1,000, due respectively July 1st, September 1st and November 1st, 1888, and renewals and other advances, etc., said D. T. Cribb & Co. mortgaged to Peacock, Hunt & Co. the fifteen acres of land mentioned, with still, fixtures, etc., and also the turpentine and timber privileges mentioned in the deed of Cribb & Phillips to D. T. Cribb & Co.; also eight head of mules described in the same manner as the eight mules mentioned in said deed; also crude turpentine, spirits of turpentine, etc.; also stock of goods, etc. in the store located on said fifteen acres of land, etc.

S. E. Cribb testified, for claimants, in substance, as follows: Cribb & Phillips were engaged in the turpentine business at Glenmore; they became embarrassed and sold out to D. T. Cribb & Co., a firm composed of D. T. Cribb, witness's brother, and M. J. Cribb, witness's wife, and made the deed dated November 1, 1887. It was a *bona fide* transaction on a valuable consideration, and not made to defraud or delay creditors. The consideration mentioned in that deed was paid as follows: $1,200 was paid by D. T. Cribb & Co. to Baldwin & Co. in satisfaction of the bill of sale to

the mules and horse dated February 21, 1887; $200 was paid by Cribb & Co. to Baldwin & Co. in satisfaction of the debt Cribb & Co. owed them for the horse "Joe Brown"; and $600 was paid by Cribb & Co. to Cribb & Phillips, $300 cash being paid to each of the last named firm. Witness's wife and brother each put in $300 of this amount, of their own money. Witness used most of his in paying off debts of Cribb & Phillips. His wife had brought some of this money with her from Carolina years ago; had sold a piece of land which she owned at Glenmore for a part of it, and he really did not know where she did get it all, but she had it and it was hers. How much money his brother had he did not know, but enough to pay his part of the $600 and to pay some besides in settling up the debts of Cribb & Phillips which Cribb & Co. assumed. In addition to this $2,000, all the property in the deed, which was the entire property of Cribb & Phillips, was sold to Cribb & Co. subject to the mortgage given by Cribb & Phillips to Baldwin & Co., dated December 31, 1886. There was then due upon this mortgage about $2,076.22, so that the property was sold at a fair price and for all it was worth at the time. Some time in October, the store and stock of goods of Cribb & Phillips at Glenmore, worth from two to three thousand dollars, were destroyed by fire. The firm owed at the time about $5,500. This loss was the cause of their embarrassment. They tried to arrange their indebtedness and continue business, but could not, and so sold to D. T. Cribb & Co. for what the business was worth, thinking it better to do that than have it sold out at a sacrifice under a mortgage against them. With the mortgage on the business, being burned out and owing what they did, Cribb & Phillips had no credit, but witness's wife and brother having some means of their own, being out of

debt and with the property sold them by Cribb & Phillips, had a good credit and were able to make all necessary arrangements and run the business. The horse and mules levied on belonged to D. T. Cribb & Co. and are the same, or some of the same, described and embraced in the deed and mortgage, the horse Joe Brown being paid for by Cribb & Co. to Baldwin & Co., and the mules part of those embraced in the bill of sale. With what money his wife and brother put in the business they raised the balance by mortgaging the property, and out of the business. His brother continued to manage a turpentine business at Naylor, where he was receiving a salary of $50 per month, and witness was employed by Cribb & Co. to run their business at Glenmore, for the reason he was familiar with it. His brother understands all about the turpentine business, but his wife knows little or nothing about it. Cribb & Co. pay him a salary of $50 per month. At the time Cribb & Phillips sold out to Cribb & Co. it was understood and agreed that witness was to be employed to run the business for them, and he was so employed by them at the time for the salary stated, and is so engaged, and it was in this capacity that he was acting when the sheriff made the levy. The land sold by his wife at Glenmore was land he had given her about two years before. He did not remember whether he had made any tax returns for her the year before or not, but knew she had money, and so did her brother.

The jury found the property subject, and the claimants moved for a new trial on the grounds that the verdict was contrary to law and evidence, and because the court charged as stated in the decision. The motion was overruled, and the claimants excepted.

J. L. SWEAT, by brief, for plaintiff in error.

S. W. HITCH and L. A. WILSON, by HARRISON & PEEPLES, contra.

BLECKLEY, Chief Justice.

Cribb & Phillips, a partnership engaged in the turpentine business, being insolvent, conveyed by deed to D. T. Cribb & Co., another partnership, composed of the wife and the brother of the former Cribb, in November, 1887, all their firm assets, both real and personal. The conveyance purported on it face to be for a valuable consideration paid. In the following February, Bagley & Rivers obtained a judgment in the county court for $67, principal, without interest, not against the partnership of Cribb & Phillips, but against both persons jointly who composed that partnership. Afterwards a *fi. fa.* founded on this judgment was levied upon certain of the personalty embraced in the conveyance, to which D. T. Cribb & Co. interposed a claim. The jury found the property subject, the claimants moved for a new trial, which was refused, and thereupon they brought this writ of error.

1. It did not appear in evidence whether the debt for which the judgment was rendered in favor of Bagley & Rivers, was contracted before or after the conveyance. We treat it as if it were contracted before, though it might have been contracted after inasmuch as by section 284 of the code, where the filing of the suit is fifteen days and service thereof ten days before a monthly session of the county court, that court can render judgment at the first term. This being so, there is nothing whatever in the record to fix with certainty when the debt was contracted, save that it must have been at least fifteen days before the rendition of judgment. The conveyance antedates the judgment by some three months. As several badges of fraud were present (see the official report), we might have had no disposition to reverse the judgment refusing a new trial, had the court left all the facts to the jury and allowed them to determine the question of actual fraud. This the court did

not do, but charged, among other things, that if at the time of the sale to the claimants, and as a part of that transaction, S. E. Cribb (one of the firm of Cribb & Phillips) was to be employed by claimants at a salary or for wages, to manage and control the business, and such employment of him was a part of the consideration or an inducement to the making of the deed, then as against the plaintiffs and the creditors of Cribb & Phillips the transaction was fraudulent and the deed void.

We think that, assuming the debt to have existed when the contract was made, there was evidence upon which to found a charge on this subject, S. E. Cribb, a witness for the claimants, having testified that at the time Cribb & Phillips sold out to D. T. Cribb & Co., it was understood and agreed that the witness was to be employed to run the business for them, and he was so employed by them at the time for the salary stated ($50 per month), and continued such employment up to the time of trial. While the witness did not expressly state that these terms constituted a part of the transaction of sale, or any part of the consideration, the jury, upon his evidence and all other facts and circumstances before them, might or might not have drawn that inference. That they were at liberty to consider the agreement testified to by S. E. Cribb in connection with all the other evidence as tending to show fraud in fact, we have no doubt. But such an agreement in and of itself did not constitute fraud in law. If the sale was made in good faith and with no design to hinder, delay or defraud any creditor, and if the consideration, apart from this agreement, was full and adequate, the superadding of the agreement as an additional element of the consideration would not render the transaction void. If, however, the sale was for less than the full value of the property, and this agreement represented a part of

that value, then the agreement would be in the nature of a reservation for the benefit of one member of the debtor firm, and the sale would be void as against existing creditors. It will be noticed that there was no stipulation for payment of the monthly wages out of the *corpus* or of the income of the property sold. The wages contemplated were not made a charge upon that property in any manner whatsoever, but when earned would constitute a debt by the employers to the employé. Hence the creation of such a debt could operate in no way to the prejudice of any creditor of Cribb & Phillips. Indeed it might be to their advantage for Cribb to earn and receive an income for his services, since in some way it might be applied in whole or in part to the outstanding debts of the firm to which he belonged. It would certainly seem that it would be better for the creditors of an insolvent debtor that the debtor should have an income from his labor than that he should have none. It is laid down in the authorities, or some of them, that in the case of assignments made by insolvent debtors for the benefit of their creditors, a provision in the deed to the effect that the debtor is to be employed at the expense of the assigned estate, will vitiate the assignment, such stipulation being in the nature of a benefit reserved. Burrill on Assignments, §198; Bump on Fraud. Conv. 3 ed. 402; 1 Am. Lead. Cas. 69, 70. The most generally recognized case on the subject seems to be McClurg *v.* Lecky, 3 Penrose & W. 83, s. c. 23 Am. Dec. 64, in which the reservation in behalf of the debtor was an interest in the annual profits of the business and the land conveyed. Compare Young *v.* Booe, 11 Ired. (Law), 247; Janney *v.* Barnes, 11 Leigh, 100; Rindskoff *v.* Guggenheim, 3 Cold. 284; Frank *v.* Robinson (N. C.), 1 S. E. Rep. 781. From these cases it will be seen that there is some difference of opinion, even in cases of assignment, as to whether the deed is rendered

void *per se* by reason of embracing a provision for the employment of the debtor, and for the payment of his compensation out of the assigned estate. But here the transaction was a straight·out sale, and the purchasers were not creditors of the sellers in any sum whatever. The property conveyed, supposing the sale to be free from fraud, neither remained the property of the debtors nor became the property of the creditors, nor was it or its proceeds burdened with the payment of the agreed compensation. As we have already said, we are unable to see how the creditors were prejudiced, provided the property brought its full value independent of the agreement. A benefit to the .debtor which costs the creditors nothing, and cannot possibly cost them anything, is not fraudulent *per se.*

2. As to the complaint that the court gave in charge to the jury section 1952, parag. 1, of the code, we will merely say that the case falls more directly under the second paragraph of the section. Nevertheless, any trust or benefit prejudicial to the creditors which would, when matter of direct stipulation, render the conveyance vicious under one paragraph, would probably have the same effect under the other, where the fact of insolvency is present as in this case. Lukins *v.* Aird, 6 Wall. 78. One section may therefore be very well given in charge to the jury as illustrative of the spirit of the other. Under the facts of this case, we would not consider it reversible error either to charge both paragraphs or to charge the one only which is directly applicable.

There must be a new trial for the error discussed under the first head of this opinion.

*Judgment reversed.*