## Takiff v. Infante et al.

*Aaron W. White*, for plaintiff.
*Martin Feldman*, for defendants.

LEVINTHAL, J., October 14, 1938.—Plaintiff's amended bill of complaint avers that she is a judgment creditor of defendant Luigi Infante and holds a mortgage to secure the bond upon which the judgment was confessed. Luigi, it is further averred, had been a member of Infante Brothers, a partnership which was dissolved in August 1935, its assets then passing to defendant. Luigi is said to have conveyed that property to his daughter Jane, the other defendant, for an inadequate consideration. Luigi is insolvent and the mortgaged property insufficiently valuable to satisfy the debt. The transfer is attacked as fraudulent. It is charged also that Luigi is now conducting the business of the Louis Paper Stock Company, a new company registered with Jane Infante as owner, in the name of his daughter in order to defraud his creditors. I am prayed to decree Jane trustee of the assets of the Louis Paper Stock Company for her father, to permit satisfaction of his obligations therefrom, and to enjoin further transfer.

Preliminary objections, which attacked the jurisdiction of this court to afford relief prior to a return of nulla bona on a writ of fieri facias, were dismissed.

Defendants' answer, in substance, denies the allegations of the amended bill. It avers that the assets of the partnership passed to a trustee and were sold to various persons for a fair consideration, that Luigi is merely an employe of the Louis Paper Stock Company, which is owned by Jane Infante. The value of the mortgaged premises is sufficient, defendants contend, to pay plaintiff.

I must decide whether the transfer of the partnership assets to Jane Infante was a fraudulent conveyance and whether Luigi Infante is the real owner of the Louis Paper Stock Company.

This case was heard by me several months ago and the responsibility for the delay in the filing of this adjudication rests with plaintiff, who neglected until very recently to file a brief which I had several times requested.

### Findings of fact

1. On or about May 18, 1927, defendant, Luigi Infante, and his brother, Giovanni Infante, executed and delivered to plaintiff, Goldie Takiff, their bond and warrant of attorney in the sum of $10,000, conditioned upon the payment of the principal sum of $5,000 at the expiration of three years from the date thereof.

2. The aforementioned bond and warrant was accompanied by a mortgage of even date secured upon premises 402 S. Water Street and 10 Pine Street, in the City of Philadelphia, Pa.

3. By reason of default in the payment of principal, taxes, and water rent, judgment was confessed on the said bond and warrant against the obligors therein in Common Pleas Court No. 3 of Philadelphia County, June term, 1937, no. 6492, in the sum of $5,313, of which no part has been paid.

4. On August 31, 1935, the fair, reasonable, and market value of premises 402 S. Water Street and 10 Pine Street was substantially less than the amount of plaintiff's claim against defendant, and remains so now.

5. Prior to August 31, 1935, defendant Luigi Infante possessed a 45 percent interest in a copartnership consisting of himself and his brothers Giovanni Infante and Dominic Infante, known as Infante Brothers, which was engaged in the paper stock business at 333 S. Water Street, in the City of Philadelphia, State of Pennsylvania.

6. On and prior to August 31, 1935, Luigi Infante was indebted to plaintiff Goldie Takiff as above stated. In addition, he was subject to a contingent liability to another person arising out of a suit in trespass for death by wrongful act; subsequent to August 31, 1935, judgment was entered in the said suit in the amount of $3,000 of which no part has been paid. On or prior to August 31, 1935, Luigi Infante was further obligated on a bond secured by a mortgage on premises 333 S. Water Street.

7. Defendant Jane Infante, daughter of defendant Luigi Infante, on and prior to August 31, 1935, was employed by said partnership in the capacity of bookkeeper, and as such was familiar with and had knowledge of the debts and obligations of the partnership and the debts and obligations of her father, Luigi Infante, to the complainant Goldie Takiff and to his other creditors.

8 On or about August 31, 1935, the aforesaid partnership was dissolved, and in the dissolution N. Richard Giannini acted as trustee for and on behalf of defendant Luigi Infante and his copartners.

9. On or about August 31, 1935, a firm was registered under the name of Louis Paper Stock Company, with respondent Jane Infante as nominal owner, and entered into business in the premises formerly occupied by the said copartnership.

10. In November 1935, the said Giannini transferred title to certain trucks and equipment to the Louis Paper Stock Company in consideration of the payment of $516.

11. At the time of the dissolution and transfer of this part of the partnership assets, defendant Luigi Infante was insolvent, and still is save for his interest in the Louis Paper Stock Company.

12. The Louis Paper Stock Company now conducts the same type of business as that conducted by Infante Brothers prior to August 31, 1935, with substantially the same customers and at the same premises.

13. Defendant Luigi Infante is the active manager of the Louis Paper Stock Company and is better acquainted with its running than is Jane Infante.

14. The financial return to Luigi Infante from the Louis Paper Stock Company is $75 per week, approximately one half of which he receives in cash, the other half being paid by check to his current creditors.

15. The financial return to Jane Infante from the Louis Paper Stock Company was $630 in 1936 and $1,500 in 1937. Her weekly earnings at the conclusion of her employment by the partnership in August 1935, were $22.50.

16. Defendant Jane Infante has made no capital contribution to Louis Paper Stock Company and all and any loans negotiated by Louis Paper Stock Company have been to and on behalf of the defendant Luigi Infante, and it is understood between Luigi Infante and Jane Infante that Luigi Infante is to be ultimately liable therefor.

17. Luigi Infante is the real owner of the Louis Paper Stock Company, and defendant Jane Infante is merely the nominal owner of said business, participating in it in the capacity of a bookkeeper in her father's employ.

18. The acquisition of part of the assets of the former copartnership by Louis Paper Stock Company and the registration of the said business and its continued opera-

tion in the name of Jane Infante were and are in pursuance of a conspiracy between defendants Jane Infante and her father Luigi Infante, to conceal the true ownership of Louis Paper Stock Company and to defraud, hinder, and delay the creditors of Luigi Infante.

### Discussion

The evidence here, when taken in its entirety, convinces me that the purported ownership of the Louis Paper Stock Company by Jane Infante is fictitious, and that the real owner thereof is, and has always been, her father, defendant Luigi Infante.

It may be true that the tangible assets transferred formally to Jane for the sum of $516 were worth no more, and I know that transactions involving parent and child are not thereby rendered fraudulent: Varsity B. & L. Assn. v. Ankele et al., 117 Pa. Superior Ct. 45, 53 (1935). But there is more here.

Luigi Infante is the dominant influence in the business. It was formed and credit extended to it because, in the words of defendants' own witness, he had "known her [Jane's] father for a great many years", and was "helping Luigi Infante get back on his feet again." The father's English given name, "Louis", was the firm name. He was the one with large experience in every phase of the business save the minutiae of bookkeeping. The firm bought from his former sources of supply and sold to his customers. Thus, while a reasonable price may have been got for the tangible assets, even assuming that the money paid for them was Jane's, more than those assets may be regarded as having passed. Apparently a considerable goodwill adhered to Louis Infante's name and to the continuing business which his daughter really bought together with the few hundred dollars worth of trucks and machinery. For that nothing was paid. Luigi Infante's relationship with the business therefore continued substantially unchanged. He was retained in it, while nominally in the employ of his daughter, in a

capacity of extreme importance and, indeed, of virtual dominance. It appears that this arrangement was contemplated from the inception of the Louis Paper Stock Company.

Finally, there is the significant fact, in itself almost determinative, that Luigi's financial returns from the business were roughly thrice his daughter's. He received a weekly salary of $75, about half of which was paid to him in cash, the other half being payments made by check directly to his creditors. Jane, the "owner", received $630 in 1936 and $1,500 in 1937, certainly no great gain over her former regular weekly wage of $22.50 while employed by the partnership of Infante Brothers as bookkeeper. The past history of the business does not indicate that there is much likelihood of sufficient income to materially increase Jane's returns. Certainly they will not approach her father's.

Upon evidence of lesser moment, transactions have been branded fictitious and thus fraudulent in the law, and voided: Smith et al. v. Craft et al., 12 Fed. 856 (D. Ind. 1882); Gray & Dudley Hardware Co. v. Guthrie et al., 200 Ala. 6, 75 So. 318 (1917); Stephens v. Regenstein & Co., 89 Ala. 561, 8 So. 68 (1889). At the very least, the case is one for the decision of the chancellor sitting as a trier of fact, with the relative financial returns of Luigi and Jane to be considered along with all the other circumstances of the case, and I so hold: Bamberger v. Schoolfield, 160 U. S. 149 (1895); Cribb & Co. v. Bagley et al., 83 Ga. 105, 10 S. E. 194 (1889); Wilcox et al. v. Landberg et al., 30 Minn. 93, 14 N. W. 365 (1882); Havens v. Exstein et al., 5 N. Y. Supp. 735. But see Smith et al. v. Craft et al., 17 Fed. 705 (D. Ind., 1883), Griffin v. Cranston, 10 Bosw. 1 (N. Y. 1862), and Boots v. Null et al., 59 S. D. 109, 238 N. W. 307 (1931). In Pennsylvania, we find no case entirely pertinent. However, in Davis v. Hukill et al., 173 Pa. 138, 144 (1896), the court indicated that if the agreement to employ the insolvent seller to dispose of the property for the buyer

were contemporaneous with the sale, it might justify a finding of fraud by the jury. See also Low v. Ivy, 10 Pa. Superior Ct. 32 (1899), and The Pennsylvania Knitting Mills of Reading v. Bibb Mfg. Co., 12 Pa. Superior Ct. 346 (1900).

I conclude, therefore, that Jane Infante has been and is merely a "straw" titleholder for her father Luigi Infante, and that the nominal sale of the property to her was in actuality a sale to him. He owns the property and its continuing fruits, and plaintiff, his creditor, may reach it.

The relief prayed for here may be granted even before the issuance of a fieri facias by plaintiff and a return of nulla bona thereon. I decided that question in dismissing defendant's preliminary objections to the amended bill. It will suffice now to refer to what was said in Sauber v. Nouskajian et ux., 286 Pa. 449 (1926), and Conemaugh Iron Works Co. v. Delano Coal Co., 298 Pa. 182 (1929).

Although plaintiff is entitled to relief, I do not want, by the grant thereof, to disadvantage other creditors whose claims have equal or greater merit. Jane Infante, therefore, will be declared trustee of the assets of the Louis Paper Stock Company for all the creditors of Luigi Infante and of the company. There should be imposed upon plaintiff, as a condition of the decree, the responsibility for notifying other creditors in order that all may have the opportunity to share in the assets in their proper proportion and priority. The parties are requested together to file a suggested supplementary decree nisi in accordance with this adjudication on or before Friday, October 21, 1938.

### Conclusions of law

1. Complainant Goldie Takiff is the holder of a valid obligation, which has matured, against respondent Luigi Infante in the amount of $5,313.

2. At the time of the dissolution and transfer of part of the former partnership's assets to Jane Infante, in November 1935, defendant Luigi Infante was insolvent, and

still is save for his interest in the Louis Paper Stock Company.

3. Defendant Luigi Infante was, at the time of the formation of Louis Paper Stock Company, and still is, the real owner of the said business and the assets thereof.

4. Defendant Jane Infante always has been and still is an employe of Louis Paper Stock Company, the registration of the Louis Paper Stock Company in the name of Jane Infante, owner, being purely nominal.

5. Defendant Jane Infante and her father Luigi Infante entered into and are now acting in pursuance of a conspiracy to hinder, delay, and defraud his creditors, including plaintiff Goldie Takiff.

6. This court has the jurisdiction to declare Jane Infante trustee for defendant Luigi Infante of the assets and business of Louis Paper Stock Company to hold them for the satisfaction of the present claims of the creditors of Luigi Infante and the Louis Paper Stock Company.

7. A decree to that effect and, in addition, restraining the prejudicial disposal of the assets, should issue.

### Decree nisi

And now, October 14, 1938, upon consideration of the foregoing case, it is ordered, adjudged, and decreed as follows:

That Jane Infante and Luigi Infante, and their agents or servants, and all others acting on their behalf, be and they hereby are restrained from disposing of or transferring the assets of the Louis Paper Stock Company, except in the regular course of business for a fair consideration in cash actually received, until the further order of this court.

### Supplemental decree nisi

And now, December 28, 1938, upon consideration of the above-captioned case, it is ordered, adjudged, and decreed as follows:

That out of the assets of the Louis Paper Stock Company, now held by Jane Infante as trustee for Luigi In-

fante pursuant to our decree nisi of October 14, 1938, payment shall first be made to those creditors of the Louis Paper Stock Company, who became such for value and in good faith without knowledge of the interest of Luigi Infante in said company;

That out of any balance of said assets payment shall thereafter be made to the remaining creditors of the Louis Paper Stock Company and to the creditors of Luigi Infante, including the plaintiff herein;

That the decree nisi entered herein on October 14, 1938, shall remain in full force and effect until the assets of the Louis Paper Stock Company shall have been distributed as aforesaid.