## Myron I. Low *v.* Edward Ivy, Appellant.    George Ivy *v.* Edward Ivy, Appellant.

*Sheriff's interpleader—Agreement with insolvent debtor—Protection from creditors.*

A sale of personal property, where the rights of creditors are concerned, must be bona fide for a sufficient consideration; the vendor must reserve to himself no rights, interest, privilege, profit or advantage that cannot be reached by execution. The want of these requisites will vitiate the sale and render it null and void as to creditors.

Where the plaintiff in a sheriff's interpleader claims under an agreement with an insolvent debtor made in part to protect such debtor from his creditors, of whom defendant was one, the agreement is fraudulent and the plaintiff cannot recover.

Argued Jan. 10, 1899. Appeal, No. 15, Jan. T., 1899, by defendant, from judgment of C. P. Columbia Co., Feb. T., 1894, No. 3, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by ORLADY, J.

Sheriff's interpleader. Before IKELER, P. J.

It appears from the record that this case arose on a sheriff's interpleader under executions upon judgments in favor of Edward Ivy against Richard Ivy. Upon levy made notice was given to sheriff that title was claimed to certain property by George Ivy and also by Myron I. Low. The cases were tried together. As to the claim of George Ivy no contest was raised and the question arose to determine the claims of Myron I. Low. Richard Ivy was insolvent. He owned and lived upon a farm in Hemlock township. Edward Ivy was a creditor prior to 1895, viz: 1893. At the trial it appeared that Myron I. Low held a mortgage against Richard Ivy, the execution defendant, for the sum of $6,500, which had been assigned to him for the sum of $4,350, the amount due upon the mortgage not appearing. Myron I. Low set up title to the property in question by virtue of a verbal agreement alleged to have been made in the fall or summer of 1895, stated in his own language to be as follows :

" In consideration of the indebtedness of Richard Ivy through

the mortgages that I held and the judgments, an arrangement was made, or an agreement with Richard Ivy, by which all the income from the farm was to be turned over to me, I to find the sale for the same, Richard Ivy to have from the farm his living and anything above, or any profits to be applied on this indebtedness on these judgments."

Subsequently to this alleged agreement, said Low became the purchaser of the personal property of Richard Ivy, on December 24, 1895, at a sheriff's sale thereof, none of which is included in the levies now in dispute in this interpleader. The personal property so purchased, or a portion of it was permitted by Low to be used by Ivy on the farm.

Richard Ivy said he had agreed to give Low everything until the debt was paid.

The property in dispute was such as had been grown on Richard Ivy's farm subsequent to the agreement with Low.

The court below charged the jury in part as follows:

[Now in 1895 in this case creditors had issued executions against Richard Ivy against this property; these different claims were set up. The sheriff was informed that Myron I. Low owned all the property levied upon, except the drill. We directed an issue in each case to try the question of ownership, an issue between George Ivy and Richard Ivy, and an issue between Myron I. Low and Edward Ivy; the issues were between the claimants and Edward Ivy. Edward Ivy is the execution creditor. He claims to hold this property by the execution, because it was the property of Richard Ivy, and not the property of Low and George Ivy. Now the question to be tried in these cases is that question of title and ownership of this personal property.] [2] . . . .

[You have heard the testimony in that case. Myron I. Low claims that, having purchased this property at a sheriff's sale, he then entered into an arrangement with Richard Ivy, that he might occupy and possess the farm, and work it, and keep his living out of it, but all the profits and income, over and above the living and expenses of running the farm, and repairs were to be paid by him, and that he was to have control of the marketing of the crops, and it was to be applied on Richard Ivy's indebtedness, and that Richard might hold the farm in that man-

ner until Myron Low's debt was paid, or different arrangements made. The expense of running the farm and the living of Richard Ivy and family was, first, as we understand the arrangement, to be deducted from the rents, issues and profits, and the balance to be turned over to Myron I. Low for marketing and application upon the debts of Richard Ivy. . . . The property levied upon and claimed by Myron I. Low is as follows : Forty-six acres of wheat, eighteen acres of corn, thirty acres of oats, four acres of potatoes, lot of cabbage, lot of hay, one gray mare, eight shoats, black cow, brindle cow, red cow, three acres of buckwheat, three horses, eleven small pigs, one drill, claimed by George Ivy. Now, if Myron I. Low in entering into this arrangement did no more than to secure his own money, to secure his own claim that was coming to him, and due him from Richard Ivy, although he obtained a preference from Ivy, there would be no fraud in that. The law tolerates and approves of a creditor's vigilance, care and diligence in securing his own claim, and allows a debtor to prefer one creditor from another provided he does nothing to injure, delay or postpone other creditors. If Myron Low acted honestly and openly in making this arrangement for the purpose of securing his own claim, and there is no dispute about its being an honest and just claim ; if he acted honestly and fairly in securing a preference from Richard Ivy, although Richard Ivy did at that time owe other parties, a number of them, if Richard Ivy agreed honestly to give Myron Low a claim over and above others, he had a right to do that under the law, if there is no collusion or fraud, if it is not tainted with fraud it would be right under the law, and the law tolerates and approves of it, as we have said before.] [3] . . . .

[It is not pretended here that any of this personal property arose under the arrangement to rent the farm except the crops. The one horse and these cattle were not sold at the sheriff's sale. They were turned over under the arrangement to conduct the farm and the dairy, and for that if the three cows were purchased with the produce of the farm or dairy, it would be a legitimate and a proper transaction between a landlord and a tenant. Richard Ivy would have the right under the law to lease his farm in the manner spoken of, except of course, the judgments existed against it, and have been spoken of as existing previous to Mr. Low's judgment.] [4] . . . .

32, (1899).]    Charge of Court—Assignment of Errors.

*ₒ* [If you find that this personal property, the arrangement in reference to the crops would be the same as between landlord and tenant, and the possession of the crops, if the contract and arrangement was honest and fair, possession of the crops by Richard Ivy would be possession by Myron I. Low.   Ordinarily between a debtor and creditor, when one person buys the personal property of a debtor there must be a change of possession, the property must be removed from the premises, but a person acquiring title by a sheriff's sale is not obliged to remove the property and give notice, but when a person buys property at a public or judicial sale, that is all the notice the law requires. The crops that grew after the arrangement was made, as these crops did, no change of possession would be required to give title to Myron I. Low in the case under the law.] [5]

The defendant submitted the following point which was refused by the court, said point and answer being as follows :

[Counsel for defendant requests the court to charge the jury that if they believe the agreement between Myron I. Low and Richard Ivy was made in part to protect Richard Ivy, an insolvent creditor, from his creditors, and Edward Ivy was one of such creditors, the agreement is fraudulent and plaintiff cannot recover in this case.   *Answer :* We refuse to so charge; as we have stated before under the law Myron I. Low would have a right to protect himself, to protect his claim, and to protect Richard Ivy, if in doing that he did not hinder and delay a sale of the property from other creditors of Richard Ivy.   If he entered into an arrangement, honestly, for the benefit of Richard Ivy and Richard Ivy's other creditors, as well as himself, although he may have gained an advantage over the other creditors, the contract would not be fraudulent.   If fraudulent in part, it would be fraudulent entire, but if it no more than protected Richard Ivy and himself so that Richard Ivy could pay him regularly, Myron Low would have a right to do that.] [1]

Verdict for plaintiff.   Defendant appealed.

*Errors assigned* were (1) refusal of defendant's point, reciting point and answer.   (2–5) To portions of the general charge, reciting same.

*Andrew L. Fritz*, with him *James Scarlet*, for appellant.—By the refusal of the affirmation of the defendant's point the court withdrew from the consideration of the jury, the evidence of fraud on which it was founded.

The question of fraud should have been submitted to the jury : Rhoads v. Blatt, 84 Pa. 31.

The point involved the fact that the intention of the agreement was known to Low for the question was one of a corrupt agreement.

A deed given to hinder, delay and defraud creditors is void as to the creditors intended to be defrauded : Benson v. Makerle, 21 W. N. C. 446.

It is not required that the evidence shall be conclusive, some of the cases say it is sufficient if it would justify a jury in finding the fact: Confer v. McNeal, 74 Pa. 112.

A point embodying correct principles should be answered affirmatively. It is error to evade a direct answer by directing the jury to the proofs before them: Ins. Co. v. Creaton, 98 Pa. 451.

But the answer of the court is misleading and therefore error: Taylor v. Fuller, 5 Pa. Superior Ct. 193.

As matter of law the reservation for Ivy and family avoided the whole agreement: Bentz v. Rockey, 69 Pa. 71.

*Fred. Ikeler*, of *Ikeler & Ikeler*, for appellee.—As we have said before, there was no question of fraud to be submitted to the jury, but the court below went further than this and invariably stated that the arrangement between Richard Ivy and Mr. Low was only good provided it was entered into honestly, and not to hinder or delay other creditors.

The remaining assignments of error may be briefly answered as follows : All the circumstances of the case were fairly submitted to the jury. They found that the agreement between Low and Richard Ivy was fair and honest, and it is a well-known principle of law that in the absence of legal fraud, it is the intent with which a sale or transfer is made, and not its tendency and effect that gives character to the transaction, and stamps it as honest or fraudulent. If it be made with the honest intent of discharging the vendor's indebtedness to the vendee, the sale is not fraudulent though its effect may be to

postpone other creditors, or to prevent them from obtaining payment at all: Covanhovan v. Hart, 21 Pa. 495; Bank v. Carter, 38 Pa. 446.

OPINION BY ORLADY, J., March 23, 1899:

On the trial of a sheriff's interpleader, which was framed to determine the title to certain personal property, it was developed that the title of the plaintiff in the issue depended upon the legal effect of a verbal agreement which was the basis of his claim, and stated by him to be as follows: " In consideration of the indebtedness of Richard Ivy through the mortgages that I hold and the judgments, an arrangement was made, or an agreement with Richard Ivy, by which all the income from the farm was to be turned over to me, I to find the sale for the same. Richard Ivy to have from the farm 'his living,' and anything above or any profits, to be applied on this indebtedness on these judgments." Two cases were tried together and verdicts were returned in favor of the claimant, the appellee.

Myron I. Low held a mortgage against the farm of Richard Ivy, which was in the occupancy of the mortgagor, and by him conducted as a dairy farm.

Myron I. Low knew that Richard Ivy was insolvent at the time of making the agreement in controversy, and that the executions of Edward Ivy were founded upon an indebtedness which antedated the verbal agreement.

The original title of Low to the personal property was not questioned, but it was urged that the secret agreement for the use of the farm and the personal property was a fraud upon the appellant. Under the arrangement as made between Richard Ivy and Myron I. Low the first item to be deducted from the returns of the business was, as stated by Ivy, " what it would take to keep the family and feed the stock," or, " his living," as stated by Low, and " anything above, or any profits, were to be applied to the indebtedness " of Ivy to Low. The " living " was without any limitation as to the size of his family, character of expenditures whether lavish or frugal, the management of the farm, repairs or improvements to the property, which were, as far as the evidence discloses, left for the decision of the insolvent debtor. The counsel for the defendant in the issue requested the court to charge the jury that " if they believe the

agreement between Myron I. Low and Richard Ivy was made in part to protect Richard Ivy, an insolvent debtor from his creditors, and Edward Ivy was one of such creditors, the agreement is fraudulent ; and the plaintiff cannot recover in this case," which was refused by the court.

In case of a sale of personal property, where the rights of creditors are concerned, it must be bona fide for a sufficient consideration.    The vendor must reserve to himself no rights, interest, privilege, profit, or advantage that cannot be reached by execution.    The want of these requisites will vitiate the sale and render it null and void as to the creditors : Sanders v. Wagonseller, 19 Pa. 248 ; Hennon v. McClane, 88 Pa. 219 ; Shakely v. Guthrie, 2 Pa. Superior Ct. 414 ; Downing v. Gault, 8 Pa. Superior Ct. 53.    If this arrangement, as it is called, was made in part to protect Richard Ivy from his creditors by covering up all of his personal property, so as to enable him to secure his " living " from it, until it was rendered valueless by time and use, the effect on the creditors would be the same as if Low had sold to Ivy on similar terms, and, if found to be true it would be void and vitiated by the fraud in law.    The point submitted should have been affirmed.    The judgment is reversed and a v. f. d. n. awarded.