# The Pennsylvania Knitting Mills of Reading, Appellants, v. Bibb Manufacturing Company.

*Fraudulent sale—Interpleader issue—Nonassenting creditors of vendors —Evidence—Inquiry as to charter of plaintiff company.*

When individuals or corporations transfer their property to a new corporation, substantially owned and controlled by the transferrers, the new corporation takes the property subject to the claims of the nonassenting creditors of the transferrers. It follows, therefore. that on the trial of an interpleader issue between two companies of which the plaintiff claims as transferee of the judgment debtor of the defendant, that while it is proper to permit inquiry into the charter and ownership of the plaintiff company, it is not error to exclude such line of inquiry as to defendant corporation.

*Sale by insolvent debtor—Reservation of benefits.*

The transfer of property by an insolvent debtor for an inadequate price and in consideration of an undertaking to pay a portion only of his debts, and a reservation of benefits to himself is void as against his creditors, nonassenting.

*Feigned issue—Act of 1897 construed—Verdict molded by defendant's judgment, etc.*

Under the feigned issue Act of May 26, 1897, P. L. 95, the court will so mold the verdict and judgment that when a recovery is had against a claimant who has taken the goods, a verdict and judgment may be entered against the claimant up to the value of the goods, but not exceeding the claim of the defendant for the amount of his execution and costs.

Argued Nov. 16, 1899.  Appeal, No. 183, Oct. T., 1899, by plaintiffs, from judgment of C. P. Berks Co., June T., 1898, No. 95, on verdict for defendants.  Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed.  Opinion by W. W. PORTER, J.

Interpleader issue.  Before ENDLICH, J.

It appears from the record and the evidence that on February 7, 1898, Zieber, Herbine & Company sold all their property to Max H. Schultze, the consideration being $1,000, the payment of certain judgments and the employment of Zieber, Herbine and Keech.  Schultze took possession of the property and business, and expended in payment of the debts of the said vendor firm the sum of $3,477.67, and later sold the same property to plaintiffs, the Pennsylvania Knitting Mills of Reading. The Bibb Manufacturing Company, a creditor of Zieber, Herbine & Company recovered judgment on May 18, 1898, for $866.46 and levied upon the property found upon the premises where the business was being conducted by defendant firm. The plaintiffs in this case filed a property claim as to the goods and property levied upon, an issue was framed to determine the title thereto between the said Pennsylvania Knitting Mills as plaintiffs and the Bibb Manufacturing Company as defendants.

[At the trial the trial judge permitted under objection of defendants the cross-examination of Max H. Arning and other witnesses as to the incorporation of the Pennsylvania Knitting Mills of Reading, the validity of the charter of said corporation not being raised by the pleadings.] [1, 2]

[The trial judge also permitted in evidence the offer of the record, the Bibb Manufacturing Company showing that it was a corporation authorized to do business in Pennsylvania.] [3]

The court below charged the jury in part as follows:

[The consideration of that bill of sale to Schultze was that Schultze should pay $1,000 to the creditors of the firm of Zieber, Herbine & Company, that he should pay certain other debts that Zieber, Herbine & Company owed, and that he was to retain in his employment the members who composed the firm of Zieber, Herbine & Company, that he should retain them in his employment in running and managing the business.

Now, gentlemen, I say to you as a matter of law that that reservation, which is a reservation for the benefit of Zeiber, Herbine & Company and each member composing that firm, in itself under the laws of this state makes that transfer inoperative as against any other creditor of Zieber, Herbine & Company. That sort of thing cannot be done, and it is not necessary for me to go into any lengthy discussion as to why the law is so. You, gentlemen, will accept my statement that such is the law and that that transfer to Schultze, under the undisputed evidence of this case, is what we term a voidable transfer, one which no creditor of Zieber, Herbine & Company would be bound by— in other words, in spite of that transfer, any creditor of Zieber, Herbine & Company had the right to treat this property as still the property of Zieber, Herbine & Company notwithstanding the transfer of Zieber, Herbine & Company to Schultze.] [9]

[The court directed a verdict in favor of defendants for the value of certain enumerated articles amounting to $1,718.25] [12] and subsequently modified the verdict as per decree, which was as follows :

[And now, to wit: December 5, 1898, it is ordered that the verdict heretofore rendered in the proceedings be so amended and molded as to be a verdict for defendant for $1,718.25 ; that thereupon if the defendant or his counsel shall within twenty days from this date remit upon the records of this proceeding so much of said verdict as exceeds the sum of $866.46, and interest thereon from May 18, 1898, and the costs of execution, the rule to show cause why a new trial should not be granted be discharged, and that otherwise, at the expiration of said period, said rule shall become absolute, as per opinion filed.] [13]

*Errors assigned* among others were (1–3) to rulings on evidence, as recited in the statement of facts. (9) To portion of the judge's charge, reciting same. (12, 13) In molding the verdict, reciting final decree.

*Charles H. Tyson*, with him *Sherman H. Hoverter*, for appellants.—In Reichenbach v. Ruddach, 127 Pa. 564, the Supreme Court establishes the rule that " if testimony upon one side of a controverted question of fact is made prominent and conspicu-

ous in the charge to a jury, common fairness requires that equal prominence should be given to opposing testimony having a contrary tendency, and the giving of such undue prominence to one side of the cause is ground for reversal." Reaffirmed in Lerch v. Bard, 177 Pa. 197. This principle applies with equal force to the admission and exclusion of testimony. The court having permitted extended examination of Schultze and other witnesses by the defendants, to establish fraud on the part of plaintiffs, the latter were clearly entitled to submit to the jury all such testimony as would properly repel the allegation of fraud and establish good faith on their part. The rule is clearly stated in Glessner v. Patterson, 164 Pa. 224.

The ninth assignment of error is directed to a portion of the charge, in which, we think, the court was clearly wrong, as to the effect of the retention of Zieber, Herbine and Keech in Schultze's employment.

This agreement to employ Zieber, Herbine and Keech was good and valid in law. The Act of April 15, 1845, P. L. 459, to the effect that " the wages of laborers or the salary of any person in public or private employment shall not be liable to attachment in the hands of the employer," has established a new rule which supersedes decisions prior to its enactment, and has been the subject of interpretation and application. The decisions thereon are to the effect that this exemption cannot be waived : Cunliffe v. Rinehart, 2 W. N. C. 79; Jones v. Garoway, 6 Luzerne L. Reg. 17; Firmstone v. Mack, 49 Pa. 387.

*Stephen M. Meredith,* for appellees.—That a transfer of his property by an insolvent debtor upon a consideration consisting partly of an inadequate price, or of an undertaking to pay a portion only of his debts, and partly of a reservation of a benefit to himself, is void as against such of his creditors as do not assent to the arrangement, and leaves them at liberty to seize the property as their debtor's, is abundantly established by such cases as McAllister v. Marshall, 6 Binn. 338, Johnston v. Harvey, 2 P. & W. 82, Sanders v. Wagonseller, 19 Pa. 248, Drum v. Painter, 27 Pa. 148, Hennon v. McClane, 88 Pa. 219, Houseman v. Grossman, 177 Pa. 453, Shakely v. Guthrie, 2 Pa. Superior Ct. 414, and Downing v. Gault, 8 Pa. Superior Ct. 52. The laws protecting wages from attachment, etc., have nothing

to do with the question. The reason why a reservation in a deed of assignment of the amount which the law exempts from execution does not avoid the transaction is just because the law and not the instrument creates the provision : Mulford v. Shirk, 26 Pa. 473. There is no act of assembly which gives an insolvent debtor transferring his business and property to a third party a right to employment in and maintenance out of their subsequent management by the transferee.

But while an insolvent debtor may make an absolute sale of his property in payment of his debts, he cannot reserve any portion of the property, or its proceeds, for his own benefit or advantage ; and if he stipulates for such reservation it will render the whole transaction fraudulent and void. In McClurg v. Leckey, 3 P. & W. 83, Mr. Justice ROGERS said: " The rule clearly deducible from all the cases is that no debtor can, in an assignment, make a reservation at the expense of his creditors of any part of his income or property for his own benefit; nor can he stipulate for any advantage to himself or family." This rule is equally applicable when the transaction takes the form of an absolute sale and there is a secret stipulation by which some pecuniary benefit is reserved to the vendor. And, accordingly, it has been held that a bill of sale, absolute on its face, by an insolvent debtor, and the delivery of goods in pursuance of it, is fraudulent and void as against creditors, if accompanied by a secret trust from which the debtor might derive benefit or pecuniary benefit: McCulloch v. Hutchinson, 7 Watts, 433, and other cases.

OPINION BY WILLIAM W. PORTER, J., January 17, 1900 :

This interpleader was framed to determine the rights in certain personal property, originally owned by the firm of Zieber, Herbine & Company. The property was transferred by them to one Schultze. The plaintiff corporation was then erected. Schultze transferred the property to this corporation for $49,500 of its capitalization of $50,000. The plaintiff company now claims the property under this title. The defendant company claims, as judgment execution creditor of the firm of Zieber, Herbine & Company, that the property is subject to levy.

The first three assignments allege that error was committed by the court below in permitting an inquiry into the charter

and ownership of the plaintiff corporation and in excluding the same line of inquiry as to the defendant corporation. It was competent to show that the plaintiff company was, in effect, but Schultze trading in other guise. When individuals or corporations transfer their property to a new corporation, substantially owned and controlled by the transferrers, the new company takes the property subject to the claims of the nonassenting creditors of the transferrers: Montgomery Web Co. v. Dienelt, 133 Pa. 585; Rice's Appeal, 79 Pa. 168. Therefore the inquiry permitted by the court below was legitimate. If Schultze held no title, his transferee, being a company of which he was practically the only stockholder, took no title as against execution creditors of the original owners of the property.

There was no issue which involved the defendant company in an inquiry as to its ownership and control. It was plaintiff in a judgment. Its rights against the defendants therein were determined. The interpleader issue involved only the right to execute the judgment against particular property.

We pass to a consideration of the ninth assignment. The learned trial judge charged the jury, in effect, that the transfer by the original firm to Schultze was inoperative as against other creditors of the transferring firm. This is said to be error. The agreement between Schultze and the debtor firm did not contemplate the payment of all their debts. The cash consideration of the bill of sale was $1,000. This, under the evidence, was palpably inadequate. The testimony shows that a material part of the consideration to the members of the transferring firm was the agreement by Schultze to give them employment. The transfer of property by an insolvent debtor for an inadequate price and in consideration of an undertaking to pay a portion only of his debts, and of a reservation of benefit to himself is void as against his creditors, nonassenting: Low v. Ivy, 10 Pa. Superior Ct. 32; Downing v. Gault, 8 Pa. Superior Ct. 52; Houseman v. Grossman, 177 Pa. 453; Hennon v. McClane, 88 Pa. 219; Miner v. Warner, 2 Grant, 488; McClurg v. Lecky, 3 P. & W. 83. The defendant company did not assent to the agreement between the debtor firm and Schultze. This the jury has found.

Indeed, the only question for them was, whether there had been an attempted compromise between the parties to the inter-

pleader such as would estop the defendants from setting up a right to execution against the property. This subject was submitted in the portion of the charge complained of in the eleventh assignment of error. That which tended to establish the title of the plaintiff company, as against the defendant's execution, was proof of recognition by the defendant company of Schultze's ownership. The plaintiff's evidence on this point was contradicted by the testimony for the defendant. Hence, the issue of fact which was determined in favor of the defendant.

We have examined the other assignments and regard it as necessary to discuss only those which relate to the action of the court in molding the verdict. The jury found in favor of the defendant for the goods in controversy (with certain exceptions), assessing the "value of the goods found to the defendants at $1,718.25." This gave the defendants a verdict in excess of the amount of their execution and costs. The court compelled a reduction in the amount of the verdict to the sum to which the defendants were entitled. The interpleader Act of May 26, 1897, P. L. 95, is not clear in its application to such a condition of the record. Section 8 provides that "a verdict and judgment may be entered against the claimant up to the value of said goods and chattels," the value of which may have been proven in the trial. Section 13 provides that if the goods and chattels be taken by the claimant (as was done in this case), "a verdict and judgment for the value thereof shall be entered against the claimant and in favor of the defendant in the issue."

A literal application of the language of the act would work an injustice in such a case as that at bar. All that the defendant had a right to recover was the amount of his execution and costs. The spirit and purpose of the act is to determine, in direct and equitable manner, controversies between execution creditors and claimants of goods levied upon. We are impelled to give the act a construction consistent with such spirit and purpose, namely, that a verdict and judgment may be entered against the claimant up to the value of the goods, and not exceeding the claim of the defendant for the amount of his execution and costs.

The assignments of error are overruled and the judgment is affirmed.