# Commonwealth, to use, Appellant, *v.* McPhilips.

*Sheriff's   interpleader — Execution — Value   of   goods—Bond —
Principal and surety.*

The verdict of a jury in an interpleader issue, wherein the
claimant was plaintiff and the execution plaintiff was defendant,
finding "for the defendant for the goods levied upon," and fixing
the value of the goods in controversy, is binding as respects value
upon the execution defendant, who is the owner of such goods,
and not made a party to such issue, when the owner brings an
action to recover upon the bond filed in the interpleader proceed-
ings.

Argued Nov. 22, 1916.   Appeal, No. 261, Oct. T., 1916,
by plaintiff, from judgment of C. P. Chester Co., Jan. T.,
1915, No. 27, on case tried by the court without a jury in
suit of Commonwealth, to use of Mary C. George v. John

McPhilips and D. Walter Rickabaugh.   Before Orlady,
P. J., Porter, Henderson, Head, Kephart, Trexler
and Williams, JJ.   Affirmed.

Assumpsit on an interpleader bond.

The case was tried by agreement without a jury by
Butler, P. J., who found the facts to be as follows:

Thomas H. B. Jacobs caused to be issued out of this
Court fi. fa. No. 37 to January Term, 1914, against
Mary C. George, the above use-plaintiff and thereunder
the sheriff levied upon the following personal property
of plaintiff: 17 cows, 1 bull, 4 horses, 3 colts, 6 hogs, lot
harness, farm wagon, buggy, brake cart, milk wagon,
mowing machine, grain drill, cultivator, 2 plows, lot of
poultry, lot of hay and lot of corn.   Following this levy,
John McPhilips, one of the above named defendants,
filed with the sheriff an affidavit asserting his owner-
ship of all this property.   An interpleader rule was
granted, with direction that notice be given Jacobs,
plaintiff in the execution, McPhilips, claimant, or their
respective counsel.   As the record shows notice to the
plaintiff here, the defendant in the execution, was not
directed, but Tevis H. Mercer, the then deputy sheriff,
testifies that he is quite sure he gave her counsel, Mr.
Hause, notice, and from some source she certainly had
notice, for exceptions to the plaintiff's bond were duly
filed for her by Mr. Hause and Mr. Lack.   Mr. Johnson
joined in the exceptions on behalf of his client, Jacobs.
At the trial of the interpleader issue Mr. Johnson repre-
sented Jacobs, and Mr. Hause sat with him, taking part
in the trial of the case, the plaintiff, here, Mrs. George,
being present in court.   Mr. Johnson is under the im-
pression that Mr. Hause was present merely to aid him,
while Mr. Walter S. Talbot, who was of counsel for Mc-
Philips, defendant, here, conceding that Mr. Hause
aided Mr. Johnson, testifies that he was present taking
part in the trial of the case in the capacity of counsel
for Mrs. George.   Under all the evidence, we find this

to have been the fact. Having represented her in filing exceptions to the bond, she being present, in court at the trial and in view of Mr. Talbot's testimony, we are satisfied that while Mr. Hause doubtless acted in harmony with Mr Johnson, who represented Jacobs, he was present at the trial of the interpleader case, as Mrs. George's counsel, looking after her interests. This view is further strengthened by Mrs. George's silence upon the subject.

The verdict of the jury was: "The jury say they do find for the defendant for the goods levied upon, the value of which they find to be $1,120." This we think clearly amounted merely to a finding that the title was not in the claimant, and could not be treated as an adjudication of title in Jacobs who manifestly conceded and maintained title to be in Mrs. George. McPhilips paid Jacobs $396.45, being the debt, interest and costs due him, and is conceded to be entitled to other credits against the plaintiff here, amounting to $914.07. The appraisement on which the bond was based was $1,852, and the bond which was originally in the sum of $1,000, was subsequently raised to $3,704, double the amount of the appraisement. We find the property to have been worth $2,075.50.

The court concluded as follows:

For the value of the goods, $1,120, less $396.45 paid on the Jacobs judgment, or $723.55, defendants are accountable to plaintiff. Plaintiff admits accountability to McPhilips, one of the defendants, to the extent of $914.07, leaving a balance of $190.50, owing to McPhilips, for which he has claimed a certificate, and which must be allowed.

Judgment is directed to be entered against the plaintiff and in favor of John McPhilips, one of the defendants, in the sum of $190.50, unless exceptions are filed within thirty days after notice to the parties or their counsel.

Assignment of Error—Opinion of the Court. [66 Pa. Superior Ct.

*Error assigned* was the judgment of the court.

*S. Duffield Mitchell,* for appellant.—Plaintiff's recourse is against McPhilips for the real value of the goods (independent of the jury's valuation), less the amount McPhilips paid to Jacobs: Penna. Knitting Mills Co. v. Bibb Mfg. Co., 12 Pa. Superior Ct. 346; Mann v. Salsberg, 17 Pa. Superior Ct. 280; Saba v. McElwaine, 57 Pa. Superior Ct. 369; Wunderly v. Leopold, 53 Pa. Superior Ct. 31.

*C. Wesley Talbot,* for appellee, cited: Mann v. Salsberg, 17 Pa. Superior Ct. 280; Lowry v. Letzelter, 45 Pa. Superior Ct. 143.

OPINION BY PORTER, J., March 16, 1917:

This is an action of assumpsit upon a bond given by John McPhilips, claimant, and D. Walter Rickabaugh, surety, in an interpleader proceeding. Thomas Jacobs had obtained a judgment against Mary C. George, the use-plaintiff in the present action, upon which judgment he issued an execution which was levied upon certain chattels. John McPhilips notified the sheriff that he claimed the property levied upon and the matter was so proceeded in that an interpleader issue was formed, in which McPhilips was the plaintiff and Jacobs the defendant. The goods were appraised at $1,852, and McPhilips filed a bond, with Rickabaugh as surety, in the sum of $3,704, which bond was approved by the court, under the provisions of the Act of May 26, 1897, P. L. 95, and the sheriff thereupon delivered to him the goods levied upon. Upon the trial of the issue the jury rendered a verdict "for the defendant for the goods levied upon, the value of which we find to be $1,120," upon which judgment was entered. McPhilips paid the claim of Jacobs and certain other executions which had been liens upon the personal property in question. The plaintiff, who had been the defendant in the execution then

brought this action upon the bond, to recover the amount
which she, as owner, was entitled to collect after the pay-
ment by McPhilips of the execution creditors. The case,
by agreement of the parties, was heard by the court be-
low without the intervention of a jury and judgment was
entered in favor of the defendant; the use-plaintiff ap-
peals.

There are numerous assignments of error in this case,
but they are all covered by the statement of the question
involved, to wit: "Is the verdict of a jury in an inter-
pleader issue, wherein the claimant was plaintiff and the
execution plaintiff was defendant, finding for the de-
fendant for the goods levied upon and fixing the value
of the goods in controversy, binding as respects value
upon the execution defendant, who is the owner of such
goods and not made a party to such issue?" This state-
ment of the question involved should, however, be quali-
fied by adding thereto the words, "when the owner brings
an action to recover upon the bond filed in the inter-
pleader proceeding." We do not deem it necessary to
consider the effect of the amendment, by the Act of May
8, 1909, P. L. 475, of the second section of the Act of
May 26, 1897, for the bond in question was voluntarily
given and the defendants having raised no question as to
its validity, we will treat it as a valid obligation. The
condition of the bond required by the Act of May 8, 1909,
is the same as that provided for by the section of the
statute of 1897 which the later statute purported to
amend. The only possible effect of the Act of 1909 would
be to change the amount of the bond which might in
some cases be required. It is, however, proper here to
state that, owing to the peculiar wording of the amend-
ing act there is at least ground for serious doubt whether
it effected any change in the law except in those cases in
which the appraised value of the goods was less than the
amount of the judgment under which they were taken in
execution.

The condition of the bond in the present case was that

required by the statute: "that he (the claimant) shall at all times maintain his title to said goods and chattels, or pay the value thereof to the party thereunto entitled." If the claimant maintains his title to the goods, that is an absolute discharge of his bond. If he fails to maintain his title to the goods, the alternative condition applies, he must pay the value of the goods to the party thereto entitled, in which case the condition of his obligation is satisfied. The statute provides that the bond shall inure to the benefit of the plaintiff in the execution, or any other person who may be adjudged to have right or title to the goods, or any part thereof, and successive suits may be brought thereon to the use of such persons until the amount thereof is exhausted. The bond required under this statute imposes an obligation which did not characterize bonds of this nature given under the legislation which this act superseded, and persons other than the execution plaintiff are now entitled to the benefit of the bond. Other persons than the execution creditor may call upon the claimant and his surety to comply with the condition of the bond, but this does not operate to expand or change the limit of the condition. When the value of the goods has been paid to the parties thereto entitled, the limit of the liability upon the bond has been reached. Had the statute stopped there, there would have been no provision for the ascertainment of the value of the goods and the execution creditor would have been put to a proceeding on the bond before he could have collected his claim. The further provisions of the statute, however, make it clearly apparent that it was the intention of the legislature that the value of the goods should be ascertained in the interpleader proceeding, and a final judgment entered against the claimant for that amount, in case he failed to maintain his title to the goods. The requirements are that the goods shall be appraised; that the appraised value shall be prima facie evidence of the real value, but, at the trial, the real value may be shown to be more or less than the appraised value

and a verdict and judgment may be entered against the claimant up to the full value of the goods. The 13th section provides that, upon the trial of the issue, if the title to the goods is found not to be in the claimant, when he has given bond and taken the goods, a verdict and judgment for the value of the goods shall be entered against the claimant and in favor of the defendant in the issue. It is thus made clear that it was the intention of the legislature that the value of the goods should be determined in the same proceeding in which the bond was filed, and the amount of the liability of the surety in the bond be thus definitely determined. We must not lose sight of the fact that there is here involved the liability of a surety upon a bond given in a proceeding in which, under the legislation, the very thing which determined the extent of his liability, the value of the goods, was required to be determined and settled.

The fact that the appellant was not formally made a party to the interpleader proceeding cannot operate to extend the liability of the surety on this bond. She is now seeking to assert a right founded upon the interpleader proceeding and she must, in this case, accept the results of that proceeding. The statute in question did not strike down any right which an owner of goods formerly possessed. It gave the owner and, perhaps, other persons interested in the goods, a new right, founded upon the bond, but it took from the owner no existing right. The learned counsel for the appellant argues that the effect of the statute was to vest in the claimant who gave bond and took the goods the title to and actual ownership of the goods, in other words, that he was made the owner of the goods by operation of law. In support of this proposition he cites a case decided by this court: Meyer v. Knight, 21 Pa. Superior Ct. 1. That case did not so decide. The question in that case was whether the goods remained in the custody of the law and subject to the lien of the execution, after the claimant had given bond and received the property from the sheriff. We

held that the property was no longer in the custody of the law, and the lien of the execution was at an end; that upon the giving of the bond and approval thereof by the court, the bond, as between the execution creditor and the claimant, took the place of the property. What we did say in that case was: "The effect of the bond is, as against the execution creditor, to vest the title to the property in the claimant." In so far as the rights of the owner of the property are involved, when that owner does not become a party to the interpleader issue, the verdict and judgment in that proceeding is not conclusive in favor of or against such owner: Seeley v. Garey, 109 Pa. 301. When, under the present statute, the claimant gives bond, with approved surety, and receives the goods from the sheriff, the property is then out of the custody of the law and the owner, whether the execution defendant or any other person, may at once proceed against the claimant who has wrongfully acquired possession of his goods. He cannot, however, proceed against the surety on the interpleader bond until the extent of the liability of that surety has been fixed in the interpleader proceeding. When the extent of that liability has been so determined, the value of the goods as found by the jury, is the limit of the liability of the surety.

The appellant advances the further contention, that, under the law, the verdict and judgment in the interpleader proceeding is not required to be for the value of the goods, but that, when a recovery is had against the claimant who has taken the goods, the court should so mold the verdict and judgment that it shall not exceed the claim of the defendant (the execution creditor), for the amount of his execution and costs. This contention might seem to have some support from the language of the opinion filed in this court in the case of Penna. Knitting Mills Co. v. Manufacturing Co., 12 Pa. Superior Ct. 346; that case was decided upon its own peculiar facts. The claimant of the property, a corporation, was really owned by the same persons who were the members of the

firm which was the defendant in the execution; the claimants and the execution defendants were really the same persons.   The language used in the closing paragraph of the opinion is to be referred to the unusual facts in that case, and is not to be given general application. We endeavored to make it clear, in Mann v. Salsberg, 17 Pa. Superior Ct. 280, that the 13th section of the act required that, when a claimant had taken the goods and failed to maintain his title, a verdict and judgment for the value of the goods must be entered against the claimant and in favor of the defendant in the issue.   We said in the latter case that when the verdict is larger in amount than the claim of the defendant in the issue, the execution creditor, the court will so mold the verdict and judgment as to prevent the injustice of giving the creditor more than the amount of his claim, and, in that connection, cited the case of Knitting Mills Co. v. Bibb Manufacturing Co., supra.   We intended thus to express the interpretation which was to be given to the case last mentioned.   If we failed, in Mann v. Salsberg, to make our meaning clear, the present writer must accept the responsibility, for he spoke for the court on that occasion. We deem it proper to say, in order to correct any misapprehension that may exist, that the express mandate of the statute is that the verdict and judgment, in such a case, must be for the value of the goods.   The court has power to so mold the judgment entered on the verdict as to prevent an injustice, this may be done by limiting the amount for which the execution creditor shall have the right to issue execution.

The extent of the liability incurred by the surety upon the bond, upon which the appellant bases her right to recover, was limited to the value of the goods as found by the jury in the interpleader proceeding.

The judgment is affirmed.